PAUL M. SMITH, CA Bar No. 306644
paul.smith@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA  95814
Telephone:    916-840-3150
Facsimile:    916-840-3159

TRINITY E. TAYLOR, CA Bar No. 310947
trinity.taylor@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA  94111
Telephone:    415-442-4810
Facsimile:    415-442-4870

Attorneys for Defendant
CENTIMARK CORPORATION

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN CASTILLO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CENTIMARK CORPORATION, a Pennsylvania corporation; QUESTMARK CORPORATION, a Pennsylvania corporation; MARIA SOTO; an individual; FERNANDO DOE, an individual; and DOES 1 Through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332, 1441(B), AND 1446**<br><br>*[Filed concurrently with the Declaration of Trinity E. Taylor; Notice of Related Cases; Corporate Disclosure Statement; Declaration of Landon Connolly; and Civil Cover Sheet]*<br><br>Sonoma County Superior Court Case No. CU24-09933<br><br>Complaint Filed:  December 18, 2024<br>Trial Date:        None Set |

Case No.
DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

**TO CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO THE PLAINTIFF RUBEN CASTILLO AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant CENTIMARK CORPORATION, a Pennsylvania corporation ("Defendant" or "CENTIMARK") hereby petitions this Court to remove this action from the Superior Court of the State of California for the County of Solano to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446. Defendant makes this petition on the grounds that complete diversity of citizenship exists between Plaintiff RUBEN CASTILLO ("Plaintiff"), a citizen of California, and Defendant, a citizen of the State of Pennsylvania, the amount in controversy exceeds $75,000, and the foregoing facts were true when Plaintiff filed the Complaint.

Defendant QUESTMARK CORPORATION ("QUESTMARK") was a citizen of the State of Pennsylvania, but was underlineddissolved in 2006.[1] The individual defendants MARIA SOTO ("SOTO") and FERNANDO "DOE" ("DOE") [collectively, the "sham defendants"] are sham defendants whose citizenship should be disregarded because Plaintiff has not pled a viable cause of action against them, and, because neither of these sham defendants have been served in this matter.

**I.     JURISDICTION.**

The United States District Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). This case may be removed pursuant to 28 U.S.C. §§ 1441(b) and 1446 because it is a civil action in which the amount in controversy exceeds $75,000, exclusive of interest and costs, it is a civil action between citizens of different states, and no actionable defendant is a citizen of the State of California.

///

///

---

[1] Any action against QUESTMARK may only proceed under the laws of the State of Pennsylvania. *Greb v. Diamond Internat. Corp.,* 56 Cal.4th 243, 272-273 (2013). Under Pennsylvania's laws Plaintiff's claims are barred by the statute of limitations because more than two years have elapsed since QUESTMARK's dissolution. Additionally, any judgment would be void and QUESTMARK is not required to appear in this barred action. *See* 15 Pa. Cons. Stat. Ann. § 1979. Thus, QUESTMARK is a sham defendant and has not been properly joined and/or served in this case.

## II.    THE STATE COURT ACTION.

On or about December 18, 2024, Plaintiff filed the present action in the Superior Court of the State of California for the County of Sonoma, entitled *Ruben Castillo v. CentiMark Corporation, QuestMark Corporation, Maria Soto, Fernando DOE, and Does 1 through 100, inclusive,* Case No. CU24-09933 (the "State Court Action").  (*See* Declaration of Trinity E. Taylor in Support of Defendant Centimark Corporation's Notice of Removal to Federal Court ["Taylor Dec."] ¶ 2, Ex. A.)

The Complaint asserts the following causes of action: (1) Whistleblower Retaliation (against Defendants CENTIMARK and QUESTMARK); (2) Retaliation in Violation of Statutes (against Defendants CENTIMARK and QUESTMARK); (3) Wrongful Termination (against Defendants CENTIMARK and QUESTMARK); (4) Intentional Infliction of Emotional Distress (against all Defendants[2]); (5) Failure to Pay Meal Period Compensation (against Defendants CENTIMARK, QUESTMARK, DOE); (6) Failure to Reimburse Required Business Expenses (against Defendants CENTIMARK, QUESTMARK, DOE); (7) Failure to Compensate for all Hours Worked (against Defendants CENTIMARK, QUESTMARK, DOE); (8) Failure to Pay Wages Due Upon Separation (against Defendants CENTIMARK, QUESTMARK, DOE); (9) Failure to Maintain Payroll Records (against Defendants CENTIMARK, QUESTMARK, DOE); and (10) Failure to Furnish Wage Statements (against Defendants CENTIMARK, QUESTMARK, DOE).  (*See* Taylor Dec., Ex. A, Complaint.)

On or about January 8, 2025, Plaintiff served Defendant with a copy of the Summons and Complaint.  (Taylor Dec., ¶ 2.)

On February 6, 2025, Defendant timely filed its Answer to Plaintiff's Complaint in the Sonoma County Superior Court.  (Taylor Dec., ¶ 3, Ex. B.)

As required by 28 U.S.C. §§ 1446(a), 1447(b), and 1449, true and correct copies of all pleadings filed by the parties is attached to this Notice of Removal.  (*See* Taylor Dec., ¶¶ 2-4, Exs. A-B.)

---

[2] "Defendants" is defined in Paragraph 1 of the Complaint as CENTIMARK and QUESTMARK only.

DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

### III.    REMOVAL IS TIMELY.

A defendant in a civil action has thirty (30) days from the date it is validly served with a summons and complaint to remove the action to federal court. *See* 28 U.S.C. § 1446(b) ("[A] notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable"); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* 526 U.S. 344, 354 (1999) (faxed file-stamped copy of complaint did not trigger removal period).

As set forth above, Plaintiff first served Defendant with the Summons and Complaint on or about January 8, 2025. (Taylor Dec., ¶ 2.) Pursuant to 28 U.S.C. § 1446(b), this removal is timely, as it is filed within thirty (30) days from the date Plaintiff served Defendant with the Summons and Complaint in this matter. (*Id.*)

### IV.    COMPLETE DIVERSITY EXISTS BETWEEN THE PARTIES.

This timely Notice is based on complete diversity of the parties. Plaintiff is a citizen of the State of California and Defendant is a citizen of the State of Pennsylvania. Defendant QUESTMARK is a dissolved Pennsylvania corporation and has not been properly joined in this matter. Defendants DOE and SOTO are sham defendants whose citizenship – while not pled in the Complaint - should be disregarded.

#### A.    Plaintiff Is A Citizen Of The State Of California.

For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.,* 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001). "[T]he existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

At all relevant times, including the date the State Court Action was filed and the date of this removal, Plaintiff was, and still is, a resident and citizen of the State of California. Plaintiff's Complaint sets forth that at all times relevant in this complaint: "…Plaintiff is and was a resident of

Tulare County, State of California." (Taylor Dec., Ex. A Compl., ¶ 4.) Throughout his employment, Plaintiff maintained a residential address in the State of California and Plaintiff's last known address is within the State of California. (Declaration of Landon Connolly in Support of Defendant Centimark Corporation's Notice of Removal to Federal Court ["Connolly Dec."] ¶ 6.) As such, Plaintiff is a citizen of California.

**B.     Defendant Is A Citizen Of The State Pennsylvania.**

Defendant was, at the time the Complaint was filed, and still is, incorporated in the State of Pennsylvania, with its principal place of business in Pennsylvania. (Connolly Dec., ¶¶ 3-5.)

The Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction. In *Hertz Corporation v. Friend, et al.,* 559 U.S. 77, 78 (2010), the United States Supreme Court adopted the "nerve center" test for determining corporation citizenship in diversity jurisdiction cases. The Court held that a corporation's "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities," and "in practice it should normally be the place where the corporation maintains its headquarters." *Id.* At the time this action was commenced in state court, Defendant was, and is now, a corporation incorporated under the laws of the State of Pennsylvania, whose corporate headquarters is in Canonsburg, Pennsylvania. (Connolly Dec., ¶¶ 3-5.) Further, Defendant's corporate offices are located in and its executives are domiciled in Canonsburg, Pennsylvania, which is where the centralized administrative functions and operations are based. *(Id.)* Pennsylvania is the actual center of direction, control, and coordination for Defendant's operations. *(Id.)* Defendant does not maintain a principal place of business in the State of California. Under the "nerve center" test, Defendant is a citizen of the State of Pennsylvania. (*See* Connolly Dec., ¶¶ 3-5.)

**C.     The Citizenship Of Defendants DOE And SOTO Is Irrelevant Because They Have Not Been Served And Because DOE Is Sued Under A Fictitious Name.**

As a preliminary matter, the Complaint does not allege the citizenship of SOTO or DOE. Assuming they are citizens of California, the citizenship of SOTO and DOE should be disregarded because they have not been served. (Taylor Decl., ¶ 7.) Under the plain language of 28 U.S.C. § 1441(b)(2), "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may

Case No.

DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). In the case at bar, upon information and belief, Defendant is the only party that has been properly joined and served. (Taylor Dec., ¶ 7.)[3] If SOTO and DOE have not been served, then removal by Defendant is proper. *Urquidez v Hyatt Corp.*, 2025 U.S. Dist. LEXIS, 7371, *3-4 (No. 3:24-cv-01975-CAB-MMP, S.D. Cal. Jan. 14, 2025) (denying remand following defendant's 'snap' removal in employment action with individual non-diverse defendant).

Furthermore, the citizenship of DOE is irrelevant to any analysis of diversity jurisdiction because he is sued as a "DOE" pursuant to a fictitious or partially fictitious name. "For purposes of removal . . . the citizenship of defendants sued under fictitious names shall be disregarded. 28 U.S.C. § 1441(b)(1). The inclusion of "doe" defendants in a state court action thus has no effect on removability. *Newcombe v. Adolf Coors, Co.,* 157 F.3d 686, 690 (9th Cir. 1998) (holding that only the named defendants' citizenship shall be considered for diversity purposes); *Salveson v. Western States Bankcard Ass'n.*, 731 F.2d 1423, 1429 (9th Cir. 1984) (holding that non-served defendants are not required to join in a removal petition); *see also Brooks v. Purcell*, 57 Fed. Appx. 47 (3rd Cir. 2002) (affirming the district court's decision to disregard the citizenship of "Sue Doe, Jennifer Doe, Ozzie Doe, and Jane Doe Cook"). Therefore, Plaintiff's inclusion of DOE and of DOES 1 through 100 has no impact on this Court's diversity analysis.

**D.     The Citizenship Of DOE and SOTO Is Irrelevant Because They Are Sham Defendants.**

The citizenship of DOE and SOTO must be disregarded for purposes of diversity because they are "sham" defendants, *i.e.,* they cannot be found liable as a matter of law – and it is well-settled that a party cannot attempt to defeat diversity of citizenship jurisdiction by adding "sham" defendants. *Morris v. Princess Cruises, Inc*., 236 F.3d 1061, 1067 (9th Cir. 2001); *Dodson v. Spillada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir. 1992); *TPS Utilicom Serv., Inc. v. AT&T Corp.,*

---

[3] To note, QUESTMARK is not a real party in interest (*see* 28 U.S.C. § 1441(a)) based on Plaintiff's allegations. Notably, Plaintiff alleges his employment began on January 15, 2022, yet QUESTMARK was *dissolved* in 2006. (*See* Taylor Dec., Ex. A Compl. ¶ 18.) Only CENTIMARK was Plaintiff's employer. (Connolly Dec., ¶ 6.)

DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

223 F. Supp. 2d 1089, 1100-01 (C.D. Cal. 2002).

Joinder of a defendant is a "sham" and is fraudulent if the defendant cannot be liable to the plaintiff on any theory alleged in the complaint. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). When determining whether a defendant is fraudulently joined, "[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Lewis v. Time Inc.,* 83 F.R.D. 455, 460 (E.D. Cal. 1979) ("[I]t is well settled that upon allegations of fraudulent joinder . . . federal courts may look beyond the pleadings to determine if the joinder ... is a sham or fraudulent device to prevent removal."); *McCabe,* 811 F.2d at p. 1339 (a defendant "is entitled to present the facts showing the joinder to be fraudulent."). If the facts reveal that joinder is fraudulent, the defendant may be dismissed from the action pursuant to Rule 21 of the Federal Rules of Civil Procedure, which provides that "[p]arties may be dropped or added by order of the court on motion of any party ... at any stage of the action and on such terms as are just." *Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 248-49 (E.D. Cal. 1992).

### 1.    As to the Fifth to Tenth Causes of Action for Alleged Labor Code Violations, DOE is not Subject to Individual Liability .

Setting aside any presumption against extraterritoriality or choice of law issues,[4] Plaintiff's Complaint is devoid of facts to support any claim against DOE for alleged violations of the Labor Code. Plaintiff's Complaint arises from an employment dispute against his former employer, Defendant CENTIMARK. (Taylor Dec., Ex. A Compl. ¶ 5.) The Fifth to Tenth Causes of Action are for Labor Code violations (e.g., failure to pay wages and to furnish accurate wage statements) in which, ordinarily, only the employer is liable; not an individual defendant like DOE - whom Plaintiff alleges was employed by Defendants CENTIMARK and QUESTMARK. (Taylor Dec., Ex. A Compl. ¶ 8.) Plaintiff does ***not*** plead liability under Labor Code § 558.1, nor does the Complaint contain facts which would support a finding that DOE was an "owner, director, officer, or managing agent" of CENTIMARK, such that he would be subject to liability under Labor Code § 558.1. The California Supreme Court explained in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 562, that managing

---

[4] In his Complaint, Plaintiff complains of conduct which occurred in the State of Arizona. (Compl. ¶¶ 24-25.)

DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

agents are employees who "exercise substantial independent authority and judgment in their corporate decision-making so that their decisions ultimately determine corporate policy." The Court further explained that a "plaintiff…would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." *Id.* at p. 577. **Here**, Plaintiff simply alleges that DOE "acted as his supervisor and exercised authority over Plaintiff's working assignments and conditions." (Taylor Dec., Ex. A Compl. ¶ 8.) Thus, the Complaint is devoid of facts that would support a finding that DOE was subject to liability for the Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action under Labor Code § 558.1.

### 2. Plaintiff Cannot State a Claim for Intentional Infliction of Emotional Distress Because He has not Pled Extreme and Outrageous Conduct Intended to Inflict Injury.

Assuming arguendo Plaintiff intended to assert the Fourth Cause of Action for Intentional Infliction of Emotional Distress ("IIED") against DOE and SOTO, this claim would fail because the factual allegations against SOTO and DOE do not constitute "extreme and outrageous" conduct as a matter of law.[5] Instead, any alleged conduct by DOE or SOTO is protected personnel management activities within the normal scope of the employment relationship which cannot form the basis for an IIED claim as a matter of law.

The elements of an IIED claim are: (1) extreme and outrageous conduct by defendant; (2) intention to cause, or the reckless disregard of, the probability of causing emotional distress; (3) severe emotional suffering; <u>and</u> (4) actual and proximate causation. *Hughes v. Pair,* 46 Cal.4th 1035, 1050 (2009); *see generally Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497-499 (1970) ["*Alcorn*"]. The Court may determine as a matter of law that the conduct "did not rise to the level of outrageous conduct so extreme" as to give rise to liability. *Davidson v. City of Westminster,* 32 Cal.3d 197, 210 (1982) ["*Davidson*"]; *see also Fowler v. Varian Associates, Inc.,* 196 Cal. App. 3d 34, 44 (1987), citing *Fuentes v. Perez,* 66 Cal. App. 3d 163 (1977) (noting that "it is for the Court to determine, in the first instance, whether the defendant's conduct may

---

[5] The Fourth Cause of Action does not specifically identify SOTO or DOE, but indicates the cause of action is being asserted against "All Defendants." However, "Defendants" is defined in Paragraph 1 of the Complaint as CENTIMARK and QUESTMARK <u>only</u>. (Compl., ¶ 1.)

reasonably be regarded as so extreme and outrageous as to permit recovery.")

To be "outrageous," conduct must be "so extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Alcorn,* 2 Cal.3d 493, 499 fn. 5 (cleaned up); *see also Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965, 1004 (1993); *Davidson*, 32 Cal. 3d at p. 209.  As noted in earlier decisions, "[t]he requirements of this rule are rigorous, and difficult to satisfy."  *Yurick v. Superior Cour*t, 209 Cal. App. 3d 1116, 1129 (1989) (cleaned up).

"Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances . . ."  *Hughes,* 46 Cal.4th at p. 1051.  In *Hughes*, the Court held that defendant's inappropriate comments ("I'll get you on your knees eventually. I'm going to fuck you one way or another" and "[y]ou are one of the most beautiful, unattainable women in the world. Here's my home telephone number and call me when you're ready to give me what I want") "fell short of conduct that is "so outrageous that it exceeds all bounds of that usually tolerated by a civilized community." *Id.* at pp. 1040, 1051 (cleaned up).

Courts have "dismiss[ed] IIED claims where an employer screamed at the plaintiff criticizing her performance, threatened to throw her out of the department, and used threatening gestures, and where an employer…called the plaintiff a senile liar." *Blackshire v. Cnty. of Yuba,* 648 F. Supp. 3d 1221, 1241 (E.D. Cal. 2023) (cleaned up).

**In the case at bar,** the Complaint specifically alleges that SOTO is an HR representative who "tried getting Tino to fire Plaintiff" and "Tino refused."  (Taylor Dec., Ex. A Compl. ¶ 31.) Nothing else is specifically directed at SOTO.  As to DOE, it is specifically alleged that DOE "threatened to send Plaintiff back home, if he did not prepare the site" and that Plaintiff was in fact sent home.  (*See* Taylor Dec., Ex. A Compl. ¶¶ 24-26.)

While the Complaint makes further general allegations of misconduct - including sporadic scheduling and being written up (Compl. ¶¶ 27, 33) - these allegations are unrelated to SOTO or DOE.  These allegations are made only as to Defendant and QUESTMARK.  Even if the complained of acts were attributable to SOTO or DOE, they are protected personnel management actions which, by law, cannot constitute "extreme and outrageous" conduct.  *See Janken v. GM Hughes Electronics,*

8                                    Case No.

46 Cal. App. 4th 55, 80 (1996) ("The Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or non- -assignment of supervisory functions…deciding who will be laid off" does not expose a supervisory employee to personal liability for intentional infliction of emotional distress); *see also Walker v. Boeing Corp.,* 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002) ("Terminating an employee for improper or discriminatory reasons, like many adverse personnel management decisions, is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress.") [6]

Because there is no proof or evidence of harassment or other acts giving rise to IIED (nor can Plaintiff sufficiently plead as much), under well-settled law, SOTO and DOE cannot be held liable to Plaintiff.  As such the individual defendants must be disregarded for purposes of diversity because SOTO and DOE are "sham" defendants.  *See, e.g.*, *Pineda v. Abbott Laboratories Inc.,* 831 Fed. Appx. 238, 240 (9th Cir. 2020).  Thus, complete diversity among the parties not only exists now, but also did at the time of the filing of this action on December 18, 2024.

## V.    THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

Where, as here, the Complaint does not specify a particular amount of damages, the removing defendant need only establish by a preponderance of evidence that the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1446(c)(2); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996) ["*Sanchez*"]; *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004)

---

[6] Further, Plaintiff's IIED claim would be preempted by the worker's compensative exclusivity doctrine.  "Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment.  Lab. Code § 3601(a); *Cole v. Fair Oaks Fire Prot. Dist*., 43 Cal.3d 148, 160 (1987) ("[W]hen the misconduct attributed to the employer is actions which are a normal part of the employment relationship, such as demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances, an employee suffering emotional distress causing disability may not avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability"); *Accardi v. Superior Court,* 17 Cal. App. 4th 341, 352 (1993) ("Emotional distress caused by misconduct in employment relations involving, for example, promotions, demotions, criticism of work practices, [or] negotiations as to grievances, is a normal part of the employment environment. A cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law"), disapproved of on other grounds, *Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 802 (2001).

DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

(amount-in-controversy inquiry in the removal context is not confined to the face of the complaint). The removing defendant meets this burden if it establishes that it is "more likely than not" that the amount in controversy exceeds $75,000. *Sanchez*, 102 F.3d at pp. 403-04. "[W]here the complaint leaves the amount in controversy unclear or ambiguous", then "a plaintiff who then tries to defeat removal must prove to a 'legal certainty' that a recovery of more than $75,000 is impossible." *Jackson v. Mercedes-Benz USA, LLC,* No. 5:20-CV-01681-DOC-KK, 2020 WL 7090839, at *1 (C.D. Cal. Dec. 2, 2020).

In determining whether the jurisdictional minimum is met, the court considers all recoverable damages, including statutory penalties and attorneys' fees. *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347-48 (1977); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998).

As detailed below, although Defendant maintains that Plaintiff is not entitled to any relief in connection with his claims, the amount in controversy in this case more likely than not exceeds $75,000.

### A.   Lost Earnings.

Plaintiff seeks to recover lost earnings or "compensation." (Taylor Dec., Ex. A, Compl. ¶¶, 42, and Prayer for Relief, ¶¶ 1-3.)

The court may consider lost earnings calculated from Plaintiff's termination through the anticipated trial date in determining the amount in controversy. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (trial court properly considered evidence of plaintiff's lost wages in determining that the amount in controversy exceeded $75,000); *Simmons v. PCR Technology,* 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (amount in controversy "should be the amount that can reasonably be anticipated at the time of removal, not merely [the amount] already incurred").

Plaintiff alleges he was terminated on January 18, 2024. (Comp., ¶¶ 4-5.) When Plaintiff's employment ended, Plaintiff alleges he was earning $25.00 per hour. (*Id*.)

Accordingly, the amount of lost earnings in controversy to date could be approximately $55,000 ($1,000 per week multiplied by 55 weeks between Plaintiff's alleged wrongful termination date and the date of this filing). (*See* Taylor Dec. ¶ 8.) This number would increase greatly if

calculated through to the date of trial and would likely exceed a claim for more than $75,000. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).[7]

### B.    Emotional Distress.

Plaintiff also seeks to recover emotional distress damages. (Taylor Dec., Ex. A, Compl. ¶¶ 42, 48, 54.)

Emotional distress damages are properly considered in calculating the amount in controversy. *See Simmons,* 209 F. Supp. 2d at pp. 1031-35 (finding that the plaintiff's alleged income loss of only $25,600 at the time of removal, included with unspecified amounts for medical expense damages, emotional distress damages, punitive damages, and attorneys' fees anticipated to incur through trial, satisfied the amount in controversy requirement).

Although Plaintiff does not state in his Complaint an amount certain for emotional distress damages, "the vagueness of plaintiff's pleadings with regard to emotional distress damages should not preclude the court from noting these damages are potentially substantial." *Richmond v. Allstate Ins. Co.,* 897 F. Supp. 447, 450 (S.D. Cal. 1995) (plaintiff's failure to make explicit demands in complaint did not prevent satisfaction of the amount in controversy).

The following cases show that in employment discrimination cases, emotional distress damages alone are often sufficient to satisfy the amount in controversy requirement. *See Bennett v. Alaska Airlines, Inc.,* CV 14-2804 FMO RZX, 2014 WL 1715811, at *3 (C.D. Cal. April 30, 2014) (removing defendant may establish the amount in controversy by reference to jury verdicts in comparable cases): (1) *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803 (1999) (upholding $450,000 emotional distress award in a single-plaintiff employment discrimination case where the plaintiff did not seek treatment from a psychologist or psychiatrist and complained of only moderate symptoms, such as nightmares and stress); (2) *Campbell v. Nat'l Passenger Railroad Corp.*, 12 Trials Digest 12th 16, 2009 WL 692094 (N.D. Cal. 2009) (awarding $120,000 in non-economic damages in a wrongful termination case); (3) *Betson v. Rite Aid Corp.*, 34 Trials Digest 14th 9, 2011 WL

---

[7] Assuming the case proceeded to trial within even 6 months of removal (24 weeks) is sufficient to push the amount of Plaintiff's alleged lost earnings beyond the amount in controversy threshold for jurisdiction ($55,000 + $24,000 = $79,000).

DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

3606913 (Super. Ct. L.A. County May 27, 2011) (awarding $500,000 for pain and suffering to employee in discrimination action). Accordingly, Plaintiff's claim for emotional distress damages alone is more likely than not to exceed $75,000.

### C.    Statutory And Civil Penalties.

Plaintiff also seeks to recover statutory and civil penalties in this action. (Taylor Dec., Ex. A, Compl. ¶¶ 39, 63, 75, 79, 82, 84 and Prayer for Relief No. 4.) Plaintiff alleges that he is entitled up to $10,000 for each violation of Labor Code §§ 1102.5. (*See* Compl. ¶ 39.) Based on Plaintiff's representations that he is entitled to penalties under the aforementioned statutes, the penalties alone would amount to at least $10,000.

Plaintiff also seeks waiting time penalties in an amount up to 30 days of pay. (*See* Taylor Dec., Ex. A Compl. ¶ 75.) It is therefore reasonable to calculate the amount in controversy for this claim based on a 30-day penalty calculated at Plaintiff's daily wage rate. *See Quitana v. Claire's Stores, Inc.,* No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013); *Stevenson v. Dollar Tree Stores, Inc.,* No. CIV S-11-1433 KJM, 2011 WL 4928753, at *4 (E.D. Cal. Oct. 17, 2011). Calculation of Plaintiff's claim for waiting time penalties for failure to timely pay all wages upon termination could result in exposure up to $6,000 ($25 x 8 hours = $200 x 30 days). (*See* Taylor Dec. ¶¶ 4-5.)

### D.    Attorney's Fees.

Plaintiff seeks to recover attorneys' fees. (Taylor Dec., Ex. A, Compl. ¶¶ 26, 41, 56, 64, 73, 80, 90, 111, 114 and Prayer for Relief.)

When authorized by statute, claims for attorneys' fees are properly considered in determining the amount in controversy. *Galt G/S*, 142 F.3d at pp. 1155-56 (attorneys' fees may be included in the amount in controversy if recoverable by statute or contract). Here, if Plaintiff prevails on his causes of action, Plaintiff may recover attorneys' fees. Lab. Code 218.5. Accordingly, Plaintiff's request for attorneys' fees is properly considered in determining the amount in controversy.

The Court may consider all attorneys' fees that, at the time of removal, can reasonably be anticipated will be incurred over the life of the case. *Goldberg v. CPC International*, 678 F.2d 1365, 1367 (9th Cir. 1982) (noting "potential attorneys' fees" could be considered for purposes of meeting

the amount in controversy requirement) (emphasis added); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys' fees likely to be incurred cannot be estimated at the time of removal").  And, as other courts have noted, employment actions often "require substantial effort from counsel."  *Simmons*, 209 F. Supp. 2d at p. 1035 (finding that the jurisdictional minimum was "clearly satisfied" given that in the court's "twenty-plus years' experience, attorney's fees in individual discrimination cases often exceed the damages").

Courts within the Ninth Circuit have found an hourly rate of $525 for employment discrimination cases to be reasonable.  *See Vysata v. Menowitz*, No. CV 18-06157 JAK RAO, 2019 WL 6138469, at *3 (C.D. Cal. June 19, 2019) (finding a rate of $575 per hour reasonable in an employment litigation matter); *Finato v. Keith Fink & Assocs.*, No. 2:16-CV-06713-RGK-AJW, 2018 WL 6978116, at *3 (C.D. Cal. Jan. 5, 2018) (finding an hourly rate of $525 per hour to be reasonable); *Andrade v Arby's Restaurant Group, Inc.*, 225 F. Supp. 3d 1115, 1144 (N.D. Cal. 2016) (finding that the lead attorney's $550 hourly rate and the associate's $350 hourly rate were both reasonable); *Red v. Kraft Foods Inc.*, 680 Fed. Appx. 597, 599 (9th Cir. 2017) (finding a district court did not err in awarding $550 per hour for partners).

Further, Courts in this Circuit have determined that 300 hours can be a reasonable estimate for the number of hours to be expended on an employment action through trial.  *See Sasso v. Noble Utah Long Beach, LLC,* No. CV 14-09154-AB AJWX, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) (finding an estimate of 300 hours for an employment action through trial to be reasonable); *Melendez v. HMS Host Family Restaurants, Inc.,* No. CV 11-3842 ODW CWX, 2011 WL 3760058, at *4 (C.D. Cal. Aug. 25, 2011) (same).

Here, Defendant anticipates that the parties will propound written discovery and that depositions of key witnesses, including a deposition of Plaintiff himself, will be necessary to evaluate the claims at issue.  Defendant may also file a motion for summary judgment, or partial summary judgment.  To the extent he prevails on at least one of his fee-shifting claims, Plaintiff can recover

DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

at least a portion of *reasonably incurred* attorneys' fees and costs.[8]

Based on the typical hourly rate for employment counsel in this Circuit and the estimated time to litigate an employment action through trial, Plaintiff could reasonably incur more than $75,000 in attorneys' fees litigating this case.

## VI.    SATISFICATION OF REQUIREMENTS OF 28 U.S.C. § 1446.

In accordance with 28 U.S.C. §1446(a), this Notice of Removal is filed in the District Court of the United States in which the action is pending.

This Court is the proper venue because it is in the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

In accordance with 28 U.S.C. §1446(a), this Notice of Removal is accompanied by Exhibits A, B, and D which are copies of all pleadings filed and/or served by the parties.  (*See* Taylor Dec., Exs. A, B, D.)

In accordance with 28 U.S.C. §1446(b), Defendant's Notice of Removal was filed within 30 days of the effective date of service on Defendant.  (*See* Taylor Dec., ¶ 3.)

In accordance with 28 U.S.C. §1446(d), Defendant's will give written notice of the removal of this Action to Plaintiff via his counsel and file a copy of that Notice with the Sonoma County Superior Court.  (*See* Taylor Dec., ¶ 6, Ex. C.)

///

///

///

///

///

///

///

///

---

[8]  Again, Defendant maintains that Plaintiff will not prevail on his claims and therefore is not entitled to any relief.  Defendant included this illustration for the limited purpose of demonstrating removal is proper based on the relief sought in the Complaint and the damages available under the claims pled.  Defendant reserves the right to object to/oppose a petition filed by Plaintiff seeking attorneys' fees and costs in this matter.

14                                                        Case No.
DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

## VII.    PRAYER FOR REMOVAL.

Because this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant respectfully requests that the Court exercise its removal jurisdiction over this Action.  In the event the Court has a question regarding the propriety of this Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to more fully brief the basis for this removal.

DATED:  February 7, 2025                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Trinity E. Taylor
     PAUL M. SMITH
     TRINITY E. TAYLOR

     Attorneys for Defendant
     CENTIMARK CORPORATION

Case No.
DEFENDANT CENTIMARK CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT